550 A.2d 696

**Kathleen McDONALD**

v.

**STATE of Maryland.**

**Daniel J. PILACHOWSKI**

v.

**STATE of Maryland.**

**Nos. 28, 29, Sept. Term, 1988.**

Court of Appeals of Maryland.

Dec. 2, 1988.

Katy C. O'Donnell, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Towson, for Kathleen McDonald.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for the State.

Patricia L. Chappell, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Towson, for Daniel Pilachowski.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

The two cases before us present one common question: does a circuit court's authority to review, de novo, a District Court's revocation of probation extend to a de novo determination of disposition? We answer the question in the affirmative.[1]

On 10 February 1987, a judge sitting in the District Court in Baltimore County found petitioner, Kathleen McDonald, guilty of solicitation. McDonald received a six month suspended sentence and was placed on supervised probation for one year. On 27 July 1987, the District Court found that McDonald had violated the terms of her probation, and the original sentence was reimposed. McDonald brought a de novo appeal to the Circuit Court for Baltimore County (Dana M. Levitz, J.) pursuant to § 12–401(d) of the Courts and Judicial Proceedings Article.[2] She received a de novo hearing on the merits of the revocation. Judge Levitz found that she had violated her probation; he denied, however, McDonald's request for a de novo hearing on the issue of disposition. It was his understanding that only the alleged violations were accorded de novo review; thus, in finding the probation to have been violated, he assumed the circuit court was limited, absent an abuse of discretion below, to reimposing the sentence given by the District Court. He reimposed the original six-month sentence.

On 21 January 1986, a judge sitting in the District Court in Baltimore County found petitioner, Daniel J. Pilachowski, guilty of two counts of battery. Pilachowski received a five

---

1. In *McDonald v. State*, No. 28, other issues are also presented. We shall discuss them in Parts II and III of this opinion.

2. Unless otherwise indicated all sections refer to the Maryland Code (1984 Repl.Vol., 1988 Cum.Supp.) Courts and Judicial Proceedings Article.

year suspended sentence and was placed on 36 months supervised probation. Subsequently, on 11 August 1986, Pilachowski pled guilty to one count of theft and was sentenced to five-years incarceration; all but three years were suspended. Based on the theft conviction, the District Court found Pilachowski to have violated probation in the battery case and reimposed the original five-year sentence to run from 4 November 1987, concurrent with the sentence Pilachowski was then serving. On 22 February 1988, the Circuit Court for Baltimore County (William R. Buchanan, Sr., J.) heard Pilachowski's de novo appeal from the District Court's decision to revoke his probation. Pilachowski requested a de novo determination of sentence. Judge Buchanan allowed Pilachowski to present mitigation evidence. Rather than take a de novo approach to disposition, Judge Buchanan ruled that the court would follow a "clearly erroneous—abuse of discretion" standard in reviewing the District Court sentence. Finding no error or abuse of discretion, Judge Buchanan reimposed the original five-year sentence.

We granted certiorari in each of these cases to decide the scope of circuit court review required by § 12–401(d) with regard to dispositions imposed by the District Court in cases of probation revocation.

## I.

Section 12–401(d), which provides for certain appeals from the District Court to be heard de novo by the circuit court, reads:

In a civil case in which the amount in controversy exceeds $2,500 exclusive of interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract, and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court. *In every other case, including a criminal case in which sentence has been imposed or suspended following a plea of nolo contendere or guilty, and an appeal in a municipal*

*infraction or Code violation case, an appeal shall be tried de novo* [emphasis supplied].

Historically, review of decisions rendered in courts of limited jurisdiction have been subject to de novo review in the circuit courts. Judge Eldridge, writing for this Court, recently recalled that

> [i]t was not until the creation of the District Court by constitutional amendment, [*see* Ch. 789, Acts of 1969, ratified November 3, 1970] and the enactment of what is now § 12–401(d) by Ch. 528 of the Acts of 1970, effective the first Monday in July 1971, that Maryland law recognized a specified area of appeals on the record from a trial court of limited jurisdiction to a circuit court.

*Harper v. State,* 312 Md. 396, 405, 540 A.2d 124, 128 (1988) [footnotes omitted]. He also noted

> that when Ch. 528 of the Acts of 1970 was first introduced, as Senate Bill 6, the wording of the bill would have effected a drastic change in the nature of appeals from the court of limited jurisdiction level. The bill provided in a new § 156 to Art. 26 of the 1957 Code (now § 12–401(d) of the Courts and Judicial Proceedings Article) that '[i]n any case, the court [of general jurisdiction] shall hear and decide the appeal on the record made in the District Court, as designated by the parties. There shall be no right to a trial de novo in the appellate court.' In the course of the legislative process, all of the above-quoted language after the first four words was stricken and new language inserted, so that the provision in pertinent part read as follows:

> 'In any case, EXCEPT A CIVIL CASE INVOLVING A CLAIM OF ONE THOUSAND DOLLARS ($1,000.00) OR MORE, THERE SHOULD BE AN ABSOLUTE RIGHT TO A TRIAL DE NOVO. IN ANY CIVIL CASE INVOLVING A CLAIM OF ONE THOUSAND DOLLARS ($1,000.00) OR MORE, THE APPEAL SHALL BE HEARD AND DECIDED ON A TRANSCRIPT OF THE RECORD MADE IN THE DISTRICT COURT.'

*Id.* at 405 n. 12, 540 A.2d at 128 n. 12. Chapter 528 of the Acts of 1970 embodied the legislature's decision to continue the established policy of de novo review in criminal cases.

The General Assembly chose this course despite the fact that the original version of Ch. 528 was endorsed by the Legislative Council and the Governor. G. Liebman, 1 *Maryland Practice: District Court Law and Practice* § 25 (1976). Moreover, in the period immediately preceding the creation of the District Court, the trial de novo practice had been subject to severe criticism. For example, in 1966, the Maryland State Bar Association denounced the de novo process:

> This [the de novo appeal] means that often the original trial is hardly more than an expensive, time-consuming discovery procedure. A trial in a court of limited jurisdiction and the trial in the same case on appeal often bear little resemblance to each other. If the district courts are to become dignified tribunals, some finality ought to be accorded the decisions of the judges of the courts. Judges of the courts of general jurisdiction should be able to dispose of appeals taken on records of trials below in less time than it now takes to decide *de novo* trials.

Maryland State Bar Association, Report of the Committee on Judicial Administration at 19, 71–72 *Trans. MSBA* (1966). In 1968 the Maryland State Bar Association once again soundly criticized the trial de novo procedure:

> Historically, there may have been a sound reason for the use of the de novo system when many of the justices of the peace and trial magistrates were untrained laymen sitting in remote rural areas of the State. However, in the present day with full time, qualified, legally trained judges manning the courts, there is no excuse for retaining the archaic and wasteful system of a double trial. The word "appeal" in connection with the de novo system is a misnomer in any case. The American Bar Association, the Maryland State Bar Association, and every other organization interested in the administration of justice advocates the abolition of the trial de novo. Maryland

took this position in approving this Committee's 1966 report. There is very little point in the State of Maryland going to the length of establishing a unified and improved lower court system if two trials will still be required to determine a man's guilt or innocence, and two trials will still be necessary to determine the right or wrong of a civil dispute.

Maryland State Bar Association, Report of the Committee on Judicial Administration on Establishment of a District Court for Maryland at 13–14, 73–74 *Trans. MSBA* (1968).

Attacks on the de novo "appeal" did not end with the establishment of the District Court. *See, e.g.,* Adkins, "The District Court: Past, Present, Future," Maryland Bar Journal at 50–51 (July 1971) (advocating full abolition of trial de novo) and Report of the Commission to Study the Judicial Branch of Government at 59 (1982) (recommending abolition of de novo appeals in criminal and municipal infraction cases). But despite the critical onslaught, the legislature's commitment to de novo review has remained.

Our cases have implicitly recognized the general breadth of that commitment. *See Harper,* 312 Md. 396, 540 A.2d 124 (1988); *Barbee v. Barbee,* 311 Md. 620, 623–624, 537 A.2d 224, 225 (1988); *Hardy v. State,* 279 Md. 489, 492–493, 369 A.2d 1043, 1046–1047 (1977); *Burch v. State,* 278 Md. 426, 365 A.2d 577 (1976). In *Burch* we indicated that the de novo review standard of § 12–401 applies to an order of the District Court revoking probation and reinstating the suspended sentence. *Id.* at 431, 365 A.2d at 580. Furthermore, it has been the consistent practice of this Court to treat "de novo appeals as wholly original proceedings, that is, as if no judgment had been entered in the lower court." *Hardy,* 279 Md. at 493, 369 A.2d at 1046. In keeping with this practice, it follows that "review" of the District Court's disposition on appeal from a probation revocation must be de novo.

Accordingly, we hold that when a District Court probation revocation has been appealed to a circuit court,

§ 12–401(d) requires that the matter be heard and considered de novo not only as to whether a violation of probation occurred but also as to the disposition to be made in the event a violation is found.

Because the Circuit Court for Baltimore County failed to consider the dispositions de novo, we reverse its judgments in both of these cases.

## II.

In McDonald's case, issues are raised that go beyond the matter of disposition. The more important of these issues addresses the determination of probation violation itself. It focuses on the admission into evidence of two laboratory urinalysis reports purportedly indicating that McDonald had been using cocaine in violation of the conditions of her probation. McDonald contested the positive urinalysis reports. The circuit court admitted these reports without requiring the State to produce the technicians who performed the tests. McDonald claims that this denied her constitutional right to confront and cross-examine witnesses. She also complains that the State failed to establish a chain of custody linking the samples analyzed to any obtained from McDonald. We recount the facts pertinent to these contentions.

At McDonald's initial de novo hearing before Judge Levitz, the State attempted to introduce evidence of the two cocaine positive urinalyses through the testimony of Sharon Tyler, a case manager with the Alternative Sentencing Program (ASP). This agency was charged with monitoring McDonald's conduct on probation. Tyler testified from her knowledge of ASP's records, which apparently contained copies of the laboratory reports. McDonald objected to the testimony, contending that it was hearsay and denied her the right of confrontation. Judge Levitz ruled that *State v. Fuller*, 308 Md. 547, 520 A.2d 1315 (1987), stands for the proposition that a probationer at a revocation hearing has a right to confront and cross-examine adverse witnesses. He granted the State a continuance so that it could obtain as

witnesses the technicians who performed the drug screening tests.

At the subsequent hearing, the State produced Ronald Raglin, Department Head of Toxicology at Maryland Medical Laboratories, Inc., (MML), a private laboratory which performs the drug screening of urine samples submitted by ASP. At the second hearing, Raglin and Tyler were the State's only witnesses. Raglin's testimony revealed that he did not perform tests on any of the samples in question (the total of three tests completed on each sample were performed by two other chemists), nor did he have personal knowledge of how these particular samples were processed. Raglin did testify as to the normal procedures utilized by MML in analyzing urine samples and how these samples are obtained from ASP.

He explained that MML employees pick up samples from ASP at designated locations. Once a sample arrives at MML, it is assigned a unique six digit identification number. The sample then undergoes a gross screening procedure called Thin Layer Chromotography. If it tests positive, the result is then confirmed by the more specific Enzyme Multiple Immunoassay Technique and then by Gas Chromotography. Raglin testified that each analysis is performed by using a fresh aliquote from the original sample and each time an aliquote is drawn, the name on the sample is checked for confirmation. He further testified that on the basis of the worksheet, the screening record, and the final report on the samples in question, normal procedures were followed in each instance. He indicated that the two final reports could be directly traced through the assigned six-digit numbers to the samples (apparently sample containers) on which the name Kathleen McDonald appeared. On inquiry from Judge Levitz, Raglin testified that these records were kept in the ordinary course of business and that they are such that are kept in the ordinary course of business.

On the basis of Raglin's testimony, Judge Levitz allowed the introduction of MML's final laboratory reports which indicated that on 1 April 1987 and 17 April 1987, urine

samples identified as submitted by one Kathleen McDonald tested positive for cocaine. At no point in the hearing did the State present evidence on how ASP generally obtains, stores, and identifies urine samples of probationers subject to such testing procedures. Nor did the State present any direct evidence to indicate that the Kathleen McDonald then on trial did, in fact, provide ASP with urine samples on or near the dates in question. Nevertheless, Judge Levitz found that McDonald had violated certain conditions of her probation, including one requiring her to refrain from using controlled dangerous substances.

### A.

We turn first to the chain of custody problem. At trial, it seems to have been the view of the State and of Judge Levitz that it was incumbent upon McDonald to disprove any violation of probation. That, of course, is not the case. When, as here, a probationer defendant has not admitted any violations, it is the State's burden to establish violations by a reasonable sufficiency of the evidence. *Smith v. State*, 306 Md. 1, 6–7, 506 A.2d 1165, 1168 (1986); *Hutchinson v. State*, 292 Md. 367, 369, 438 A.2d 1335, 1336 (1982); *Dean v. State*, 291 Md. 198, 202, 434 A.2d 552, 554 (1981). In a case like this one, in which one violation charged is the use of drugs, the State has the burden of proving, by a preponderance, that the probationer used drugs. The fact that the probationer remains silent and produces no witnesses in no way reduces the State's initial burden to come forward with evidence, although it may well make the State's burden of persuasion much easier.

In this case the State undertook to show that McDonald's urine had, on two occasions, tested positive for cocaine. It put in evidence analyses that purported to show just that. What it failed to establish was that the urine tested was in fact the urine of that Kathleen McDonald who was then on trial.

McDonald attempted to invoke the chain of custody provisions of § 10–1003 of the Courts and Judicial Proceedings

Article. That section by its very terms applies in "a criminal proceeding" and a probation revocation proceeding is civil. *Chase v. State,* 309 Md. 224, 238, 522 A.2d 1348, 1355 (1987). McDonald does not press the § 10–1003 issue before us. Moreover, we are convinced the section is inapplicable.[3] Nevertheless, the State must establish the chain of custody—that is a basic step in authenticating the evidence prior to its admission. *See* 7 Wigmore, Evidence § 2129 (Chadbourne rev. 1978); *Amos v. State,* 42 Md.App. 365, 369–371, 400 A.2d 468, 471–472 (1979). It failed to do so here.

Mr. Raglin testified as to the tests performed by MML on 1 April 1987 and on 17 April 1987. He explained that an MML courier picked up urine samples from ASP and other customers. He explained how the samples were handled once they reached MML. Neither he, nor anyone else, testified about how urine samples were obtained, labeled, and stored at ASP, or how they were delivered to the MML courier. Neither he, nor anyone else, testified that on any dates close to 1 April and 17 April, the Kathleen McDonald then on trial delivered samples of her urine to ASP. Indeed, the record contains no evidence that any Kathleen McDonald *ever* gave urine samples to ASP. We have nothing more than the delivery, to MML, of urine samples labelled with the not uncommon name of Kathleen McDonald and the subsequent processing of those samples. That is simply not enough to authenticate the urine samples with the requisite degree of certainty. *See Unigard Ins. Co. v. Elmore,* 137 Ga.App. 665, 666, 224 S.E.2d 762, 763 (1976) (blood alcohol test results inadmissible where there was no showing that a blood sample was ever taken from

---

**3.** On 27 May 1988 the Governor signed Ch. 728, Acts of 1988, codified as § 10–914, to deal with the admission of drug and alcohol screening tests in probation revocation cases. Section 10–914 is similar in many respects to § 10–1003 and contains its own chain of custody provisions. This enactment is an indication that the General Assembly did not intend § 10–1003 to extend to related evidentiary issues in probation revocations.

decedent); *Priest v. McConnell,* 219 Neb. 328, 335–336, 363 N.W.2d 173, 178 (1985) (chemical analysis of urine sample inadmissible where plaintiff failed to establish how or where the urine sample was taken from defendant); *Newton v. City of Richmond,* 198 Va. 869, 873–875, 96 S.E.2d 775, 778–780 (1957) (results of blood alcohol tests inadmissible where evidentiary foundation showed only that vial of blood tested bore accused's name).

Judge Levitz erred in admitting into evidence the urine analyses. For this reason, his finding of probation violation must be vacated.[4]

### B.

We need not address McDonald's arguments as to hearsay and confrontation. At its 1988 session, the General Assembly added a new § 10–914 to the Courts and Judicial Proceedings Article. *See* n. 3, *supra.* Section 10–914 provides for the admission of laboratory test reports in probation revocation hearings and permits confrontation of the chemists who conducted the tests. It is structured much like § 10–1003.[5] It may well be controlling in any further

---

4. Judge Levitz found McDonald guilty of several other probation violations, including failure to report, failure to perform community service, and failure to abstain from alcohol use. It is possible that her probation would have been revoked even absent the evidence of cocaine use, but we cannot be sure. Accordingly, we cannot conclude that the error in admitting the urinalysis reports—the only evidence of cocaine use—was harmless. *See State v. Fuller,* 308 Md. 547, 554, 520 A.2d 1315, 1318 (1987); *Dean v. State,* 291 Md. 198, 203, 434 A.2d 552, 555 (1981).

5. Section 10–914 reads:

   (a) *Test results as evidence of violation of condition of probation or work release.*—A laboratory test, performed by a laboratory certified by the Department of Health and Mental Hygiene and approved by the Division of Parole and Probation of the Department of Public Safety and Correctional Services, indicating that the defendant has used a controlled dangerous substance as defined in Article 27 of the Code or alcohol in violation of a condition of the defendant's probation or work release, is sufficiently reliable to justify revocation of the defendant's probation or work release,

proceedings.[6]

without an expert witness from the laboratory testifying in court to support the contents of a report of the laboratory test.

(b) *Requirements of laboratory test report.*—A report of a laboratory test described under this section shall:

(1) Identify the chemist or analyst who performed the laboratory test as an individual qualified, under standards approved by the Department of Health and Mental Hygiene, to perform the laboratory test;

(2) Be signed by the chemist or analyst who performed the laboratory test; and

(3) Contain a statement that:

(i) The material delivered to the chemist or analyst who performed the laboratory test was properly tested under procedures and equipment approved by the Department of Health and Mental Hygiene;

(ii) The procedures of the laboratory test are reliable; and

(iii) The laboratory test indicates that the defendant used a controlled dangerous substance or alcohol.

(c) *Prima facie evidence.*—A report of a laboratory test is prima facie evidence of the results of the laboratory test.

(d) *Right to support or contradict.*—Nothing in this section precludes the right of any party to introduce any evidence that supports or contradicts the evidence contained in or the presumptions raised by the report of the laboratory test described under subsection (b) of this section.

(e) *Cross-examination of chemist or analyst.*—Subject to the provisions of subsection (f) of this section, if a laboratory report or statement is admitted in evidence, the chemist or analyst who performed the laboratory test is subject to cross-examination by any party to the proceeding.

(f) *Chemist or analyst as prosecution witness.*—(1) On written demand of a defendant filed in the proceeding at least 5 days before the hearing to revoke a defendant's probation or work release, the prosecution shall require the presence of the chemist or analyst who performed the test or any individual in the chain of custody or control as a prosecution witness.

(2) The provisions of subsections (a), (b), and (c) of this section concerning prima facie evidence do not apply to the testimony of a witness whose presence is required under this subsection.

(3) Subsections (a), (b), and (c) of this section apply in a proceeding to revoke a defendant's probation or work release only when a copy of the report of the laboratory test or the statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to the defendant personally when the defendant is not represented by counsel, at least 10 days prior to the introduction of the report of the laboratory test or the statement at the hearing.

6. Although § 10–914 did not become effective until July 1, 1988, several months after McDonald's de novo probation revocation hear-

We shall assume that the State, on remand, intends to pursue McDonald's drug-related violation of probation. If the State can identify the urine samples as those obtained from McDonald, show that MML was certified and approved pursuant to § 10–914(a), and if it complies with the notice requirement of § 10–914(f)(3), the admissibility of the laboratory reports will be governed by the statute. If the State can identify the urine samples as those obtained from McDonald, but cannot invoke the statute, the admissibility of the tests will be governed by the principles we stated in *Fuller*, 308 Md. at 552–553, 520 A.2d at 1317–1318.

### III.

McDonald's final contention is that Judge Levitz erroneously denied her Rule 4–345(b) motion for modification of sentence, after he had revoked her probation and imposed the sentence placed on her by the District Court. Since we have vacated both of those actions, this is another issue we need not consider. But it is an important one, and may arise again in the case, so we will touch on it briefly.

■ Maryland Rule 4–345(b) provides a court with "revisory power and control over a sentence upon a motion filed within 90 days after its imposition...." In the recent case of *Coley v. State*, 74 Md.App. 151, 156, 536 A.2d 1166, 1169 (1988), the Court of Special Appeals held that "where a probation is revoked and resentencing occurs, the 90 day modification period should run from the date the new sentence is reimposed." The court reasoned

> that if an order revoking a defendant's probation returns the hearing judge to the original sentencing status, then any sentence so imposed must have the effect of an original sentence. Because Rule 4–345(b) applies to any sentence, it must apply to a sentence which is imposed following a revocation of probation.

---

ing, it may be applied retroactively since it is procedural and does not effect a change in substantive rights. *See Mason v. State,* 309 Md. 215, 219–220, 522 A.2d 1344, 1346 (1987).

*Id.* We agree with the rationale applied by the Court of Special Appeals; it is consistent with our holding in Part I of this opinion. Whether the hearing judge reimposes the original sentence or imposes a new sentence, the effect under Rule 4–345(b) remains the same; the 90–day period runs from the time *any* sentence is imposed or reimposed upon revocation of probation, and the court retains the authority to modify that sentence as the rule provides.

### IV.

In *McDonald v. State,* No. 28, we have set aside both the disposition imposed by the Circuit Court for Baltimore County and its determination that McDonald violated a condition of her probation. On remand, then, the entire revocation of probation proceeding must be heard de novo. In *Pilachowski v. State,* No. 29, we have set aside only the disposition. On remand in that case, only disposition must be considered de novo; there need be no redetermination of probation violation.

JUDGMENTS IN NO. 28 AND NO. 29 REVERSED. CASES REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY BALTIMORE COUNTY, MARYLAND.