705 A.2d 151

**STATE of Maryland**

v.

**Craig Nathaniel WEBSTER.**

**No. 808, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Feb. 4, 1998.

586

Emmet Davitt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellant.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellee.

Argued before MOYLAN and HARRELL, JJ., and ROSALYN B. BELL Judge (retired), Specially Assigned.

HARRELL, Judge.

This case involves two principal questions: whether the trial judge had the authority to modify appellee Craig Nathaniel Webster's sentence; and even if he did not, whether the State, appellant here, had any right to appeal that action to this Court. Normally these questions would be approached in reverse order for obvious reasons. In this case, however, for reasons we shall explain anon, we address them as stated. We hold, under the facts of this case, that the trial court lacked the authority to modify the sentence, and we further hold that, because of the nature of that legal error, the State possessed a common law right to appeal the trial court's decision. Accordingly, we vacate the trial court's modified sentence, and we remand with directions that the prior sentence be reimposed.

## FACTS

On 15 July 1993, Craig Nathaniel Webster was convicted in a jury trial in the Circuit Court for Howard County of daytime

housebreaking and felony theft. Pursuant to Maryland Rule 4–245(c), the State, on 21 July 1993, served appellee with proper notice of its intent to seek a mandatory sentence pursuant to article 27, section 643B(c) of the Maryland Code (1957, 1996 Repl.Vol.). Article 643B(c) mandates:

[A]ny person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. The court may not suspend all or part of the mandatory 25–year sentence required under this subsection. . . .

The State offered the following convictions for crimes of violence as the basis for the mandatory sentence: (1) On 25 February 1985, appellee was convicted in the Circuit Court for Howard County for the crime of daytime housebreaking (the court suspended the sentence of eighteen months, but defendant ultimately served nine months of the sentence for a violation of probation conviction related to the housebreaking conviction); and (2) on 8 February 1989, appellee was convicted in the Circuit Court for Baltimore County for the crime of robbery and was sentenced to six years in the Department of Corrections. Appellee's conviction for daytime housebreaking in the instant case constituted the third conviction of a crime of violence for purposes of the mandatory sentence.

On 25 January 1994, the court merged the theft and daytime housebreaking convictions and sentenced appellee, pursuant to section 643B(c), to a mandatory sentence of twenty-five years imprisonment without the possibility of parole.[1] At the

---

1. At the 25 January 1994 sentencing, the court stated that it imposed the mandatory twenty-five year imprisonment without parole because it had no discretion in the matter. The court stated: "The court is not a fan of either mandatory life sentences or twenty-five without parole. The Court believes it is not the best way to proceed often and, quite

time of sentencing, appellee's prior convictions for robbery and daytime housebreaking, as well as his contemporaneous conviction for daytime housebreaking, constituted crimes of violence as defined by article 27, section 643B(a). *See* Md. Code (1957, 1992 Repl.Vol., 1993 Supp.), Art. 27 § 643B(a).

One day after appellee's sentencing, on 26 January 1994, the Maryland Senate introduced Senate Bill 322 which, among other things, proposed deleting daytime housebreaking from the list of section 643B(a) crimes of violence. 1994 Senate Journal, at 369. On 22 February 1994, pursuant to Maryland Rule 4–345(b),[2] appellee filed a Motion for Modification or Reduction of Sentence. In his motion, appellee did not offer a reason for the open-ended request for modification or reduction of his sentence. On 16 March 1994, the trial court, without elaboration, deferred ruling on appellee's motion.

On 26 May 1994, Senate Bill 322 was enacted, including the provision deleting daytime housebreaking from the section 643B(a) list of crimes of violence. *See* Act of May 26, 1994, ch. 712, 1994 Md. Laws 3162 ("the Act"). It provided that the law would take effect on 1 October 1994. *See id.* § 5. In section 3 of the Act, it was stated:

That the changes that are made to Article 27, § 643B of the Code by this Act shall apply prospectively only to defendants who are sentenced after the effective date of this Act and may not be construed to apply in any way to defendants who are sentenced before the effective date of this Act.

*Id.* § 3.

Over two years later,[3] on 19 December 1996, the trial court held a substantive hearing on appellee's 22 February 1994

---

frankly, what they catch a lot of times are people like Mr. Webster who are not particularly very crafty criminals...."

**2.** Maryland Rule 4–345(b) provides: "The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition ... (2) in a circuit court, whether or not an appeal has been filed."

**3.** By making this observation, we do not intend necessarily to criticize by implication the passage of this amount of time before the court

Motion for Modification or Reduction of Sentence. There, for the first time, appellee contended that the trial court had the discretion, pursuant to Rule 4–345(b), to reduce appellee's sentence based on the 1 October 1994 change in the definition of "crime of violence" to exclude daytime housebreaking. At the conclusion of the hearing, the trial judge stated that it would "take the matter under advisement." He noted that "the way I have always looked at it is that it's a mandatory twenty-five [years] without parole which means I don't have any discretion." He continued, "I don't think that the reclassifications of the criminal offenses for future offenses have altered that, but it's certainly a possibility worth looking at." He asked the parties to present, in writing, any authority on the issue.

On 29 January 1997 and after reviewing the parties' memoranda, the court filed a Memorandum and Order granting appellee's motion to the extent of allowing a new sentencing hearing. The trial judge, in light of the fact that the 1 October 1994 definition of "crime of violence" excluded daytime housebreaking, stated:

> [I]t would be unjust not to provide a new sentencing hearing for the Defendant in light of the Court's expression at the time of sentencing and at various points in the proceedings that it would not have imposed the twenty-five year sentence without parole if it had any discretion or other option. The type of crime that Mr. Webster was convicted of—daytime housebreaking—is precisely the type of crime that the General Assembly found to be inappropriate to include as a crime of violence.

The judge further noted that one of the two predicate convictions was also for daytime housebreaking.

At the re-sentencing hearing on 9 May 1997, the trial court vacated the 25 January 1994 sentence and instead ordered two concurrent ten year sentences for daytime housebreaking and

---

affirmatively considered the motion. We are aware that trial judges often have very good reasons for deferring action on sentence review requests.

felony theft. From that decision, the State appeals and raises a single issue for our consideration:

Whether the trial court lacked the authority to modify a sentence legally imposed pursuant to the mandatory provisions of article 27, section 643B of the Maryland Code.

Appellee moved to dismiss the appeal, arguing that the State possessed no statutory or common law right to appeal the trial court's decision.

As noted earlier, we first address the trial court's authority to modify the appellee's original sentence, and because we conclude that the trial court lacked such authority, we then address the State's right to appeal the trial court's actions. Our unusual order of discussing these issues is dictated by the fact that our resolution of appellee's motion to dismiss, i.e., the State has a common law right of appeal in this instance, is dependent on the ground of our decision regarding the merits of the State's appellate argument, i.e., the court, in modifying appellee's sentence, exceeded its authority or power.

## DISCUSSION

### I.

The State argues that the trial court erroneously concluded that Rule 4–345(b) vested it with so broad a revisory power to modify a sentence that it could ignore a seemingly clear statutory mandate circumscribing its discretion in this matter. The State contends that the legislature intended the 1 October 1994 definitional change to apply prospectively and, therefore, that it intended the prior version of the statute should govern all those defendants who, like appellee, were sentenced prior to the effective date of the change.

For some degree of guidance, we consider first the effect of statutory definitional changes relative to pre-existing statutory offenses committed prior to the modifying enactments. In doing so, we recognize a fundamental difference between such cases, where a major issue is the determination of criminality (or the elimination thereof) accorded whatever conduct is involved, and the present one, where the major thrust does

not implicate the assignment or withdrawal of criminality, but concerns the appropriate punishment. In *Spielman v. State,* 298 Md. 602, 471 A.2d 730 (1984), the Court of Appeals noted that " '[t]here is a general presumption in the law that an enactment is intended to have purely prospective effect. In the absence of clear legislative intent to the contrary, a statute is not given retrospective effect.' " *Id.* at 607, 471 A.2d 730 (citing *Traore v. State,* 290 Md. 585, 593, 431 A.2d 96 (1981)); *see also State v. Johnson,* 285 Md. 339, 343, 402 A.2d 876 (1979) ("It is a widely recognized principle that the retroactive operation of a statute is disfavored."). In keeping with this principle, "most legislatures have enacted general savings statutes which have the effect of continuing a repealed statute in force for the purpose of punishing offenses committed prior to repeal." *Johnson,* 285 Md. at 344, 402 A.2d 876.

Maryland has enacted such a general savings clause. Article 1, section 3 of the Maryland Code (1957, 1996 Repl.Vol.), provides:

The repeal, or the repeal and reenactment, or the revision, amendment, or consolidation of *any* statute, or part of a section of any statute, *civil or criminal,* shall not have the effect to release, extinguish, alter, modify or change, in whole or in part, *any penalty,* forfeiture, or liability, either civil or criminal, *which shall have been incurred* under such statute, section or part thereof, *unless the repealing, repealing and reenacting, revising, amending or consolidating act shall expressly so provide;* and such statute, section or part thereof, so repealed, repealed and reenacted, revised, amended or consolidated, shall be treated and held as still remaining in force for the purpose of sustaining any all proper actions, suits, proceedings or prosecutions, civil or criminal, for the enforcement of such penalty, forfeiture or liability, as well as for the purpose of sustaining any judgment, decree or order which can or may be rendered, entered or made in such actions, suits, proceedings or prosecutions imposing, inflicting or declaring such penalty, forfeiture or liability.

(emphasis added). This provision "sav[es] any penalty, forfeiture or liability incurred under a statute which is subsequently repealed or amended unless the repealing act expressly provides otherwise." *Johnson*, 285 Md. at 345, 402 A.2d 876.

 In determining the legislative intent of a statute, " '[t]he primary source . . . is, of course, the language of the statute itself.' " *State v. Pagano*, 341 Md. 129, 133, 669 A.2d 1339 (1996) (citing *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986)). In some circumstances the Court only needs to look at the "statutory language to determine the legislative purpose," however, the Court "may always consider evidence of legislative intent beyond the plain language of the statute." *Pagano*, 341 Md. at 133, 669 A.2d 1339. In construing a statute, the Court "seek[s] to avoid results which are 'illogical,' 'unreasonable,' or 'inconsistent with common sense.' " *Romm v. Flax*, 340 Md. 690, 693, 668 A.2d 1 (1995) (citing *Tucker*, 308 Md. at 75, 517 A.2d 730).

Here, section 643B(a) enumerates the crimes included in the definition of "crime of violence," but, on its face, makes no reference to the retrospective operation of any crimes previously included, but which have been excluded or deleted at any point during the life of the statute.[4] The Act amending section 643B, however, specifically refers to the statutory change excluding daytime housebreaking from the list of crimes constituting crimes of violence. *See* Act of May 26, 1994, ch. 712, sec. 3, 1994 Md. Laws 3162. In section 3 of the Act, the legislature stated:

---

4. Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 643B(a) states:

(a) *Crime of violence defined; correctional institution defined.*—As used in this section, the term "crime of violence" means abduction; arson in the first degree; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming . . .; murder; rape; robbery; robbery with a deadly weapon; carjacking or armed carjacking; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault in the first degree; and assault with the intent to murder, assault with intent to rape, assault with intent to rob, assault with intent to commit a sexual offense in the first degree, and assault with the intent to commit a sexual offense in the second degree. . . .

That the changes that are made to Article 27, § 643B of the code by this Act shall apply prospectively only to defendants who are sentenced after the effective date of this Act and may not be construed to apply in any way to defendants who are sentenced before the effective date of this Act.

*Id.* Furthermore, in a committee note, the legislature stated that the deletion of daytime housebreaking from the definition of "crime of violence"

is a substantive change that is intended to enhance the fairness and uniformity of sentencing practices in the State. The Committee believes that the mandatory minimum sentences established in this section should be applicable only to crimes against persons or crimes that directly involve a threat to human life. In addition, the deletion of the crime of daytime housebreaking is a logical change because this bill eliminates the distinction between daytime and nighttime housebreaking.... Under Section 3 of this bill, this change will apply prospectively to cases in which a defendant is sentenced after the effective date of the bill.

1994 Md. Laws 3158–59.

█ A plain reading of the statute, in combination with the legislative history, indicates that if a court sentences a defendant prior to 1 October 1994, the new definition of crime of violence does not apply because the legislature clearly stated there should be no retrospective application of the new definition. Under this reading of the statute, the new definition does not apply to appellee, who was sentenced on 25 January 1994, over nine months prior to the effective date of the statutory change.

Appellee claims, however, that the legislature intended the word "sentence" in section 3 of the Act amending section 643B to include both initial sentencing and any subsequent sentencing proceedings. He argues that no language in the Act limits the meaning of the word sentenced to the initial sentencing proceedings. He contends that prior court decisions have broadly interpreted the term sentence to include both initial and subsequent sentencing proceedings, and therefore, that

this Court should interpret the legislature's intent consistent with those decisions. *See, e.g., Greco v. State,* 347 Md. 423, 433, 701 A.2d 419 (1997); *McDonald v. State,* 314 Md. 271, 284–85, 550 A.2d 696.

Specifically, appellee relies on *Greco* for the proposition that the court's modification of a sentence pursuant to a timely filed Rule 4–345(b) motion constitutes an "imposition" of a new sentence. *Id.* at 433, 701 A.2d 419. He contends that his resentencing on 9 May 1997 therefore constitutes a new sentencing "after the effective date of [the] Act" deleting daytime housebreaking from the definition of crimes of violence, and accordingly, the court should apply the then prevailing definition of crime of violence. In *Greco,* the Court considered the timeliness of a second motion to modify, filed more than ninety days after the original imposition of the sentence, but within ninety days of the granting of a previous motion to modify the original sentence. *Id.* at 428, 701 A.2d 419. The Court stated: "If the sentencing court grants a motion for modification and reduces the sentence, this subsequent sentence then becomes the effective sentence . . . . [t]hus, a reimposition of sentence in these circumstances is the equivalent of an 'imposition' [sic] sentence under Maryland Rule 4–345(b)." *Id.* at 433, 701 A.2d 419. The Court concluded therefore that "when a sentencing court grants a timely request for modification or reduction of sentence, the defendant may file another request for modification or reduction of sentence within 90 days of the date of the subsequent imposition of the sentence." *Id.*

█ In contrast, in the case before us, the operation and timing of the review/modification process with regard to a sentence after its reimposition (or a new imposition) is irrelevant if the court's authority to modify the original sentence was circumscribed by clear legislative expression. In imposing a section 643B(c) penalty, the court, once the State establishes the existing predicate requirements, "has no choice but to impose the mandatory minimum penalty upon the third crime of violence conviction." *Jones v. State,* 336 Md. 255, 262, 647 A.2d 1204 (1994). Here, the State established the

predicate requirements under the then prevailing law, and the court accordingly sentenced appellee to twenty-five years of imprisonment.

The legislature clearly indicated that the court may not construe the 1 October 1994 change in the definition of crime of violence "to apply *in any way*" to anyone sentenced prior to the effective date of the Act; here, the court purported to do just that. As further evidence of the legislative intent, we note that once a defendant files a timely Rule 4–345(b) motion for reconsideration of a sentence, the court can act on that motion at any time. *See Greco,* 347 Md. at 435, 701 A.2d 419. To counter the reality of that otherwise desirable, open-ended potentiality, the legislative history of the Act evidences the legislature's intent to draw a clear line for application of the former and new definition. Because the legislature did not intend the new definition to apply to reconsideration proceedings for sentences imposed before the statutory change, we conclude that the court exceeded its authority in granting appellee's motion to modify and, on the strength of that, exceeded its authority in imposing a new sentence contrary to the mandatory one required and properly imposed on 25 January 1994. We hold, therefore, that the second sentencing proceeding is a nullity. We emphasize that we reach this result because appellee, when called upon to offer the reason or reasons in support of his motion to modify, relied exclusively on the 1 October 1994 enactment.

## II.

Having determined that the trial judge lacked the power to modify appellee's sentence as he did, we turn to appellee's motion to dismiss the appeal on grounds that this Court lacks both statutory and common law authority to entertain the State's appeal. While we agree with appellee that the State lacks the statutory authority to appeal in this case, we disagree regarding the State's common law authority. We conclude instead that common law principles authorize this Court to entertain the State's appeal.

■ The State's right to appeal from a lower court's decision in a criminal case derives from both statutory and common law. *Cardinell v. State*, 335 Md. 381, 396, 644 A.2d 11 (1994). Section 12–302(c) of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 1995 Repl.Vol.) sets forth the State's statutory grounds for appeal in a criminal case. Among those statutory grounds, "[t]he State may appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code." *Id.* § 12–302(c)(2). In our case, the State argues that the trial court, in modifying appellee's sentence, failed to impose a sentence mandated by article 27, section 643B(c). Appellee contends that this appeal is not a direct appeal from a final judgment, and therefore, section 12–302(c) provides no basis for the appeal.

■ In *Chertkov v. State*, 335 Md. 161, 642 A.2d 232 (1994), the Court of Appeals addressed the State's authority to appeal a trial court's modification of a sentence. *Id.* at 166–70, 642 A.2d 232. There, the trial court legally sentenced the petitioner in accordance with the parties' plea agreement. *Id.* at 168, 642 A.2d 232. After the court modified the sentence pursuant to Maryland Rule 4–345(b), the State appealed, alleging that the trial court imposed an illegal sentence. *Id.* The Court concluded that section 12–302(c)(2) did not authorize the State's appeal in that case. *Id.* at 168–69, 642 A.2d 232. The Court stated that the General Assembly, by enacting

"Ch. 49 of the Acts of 1976 ... legislated with respect to direct appeals from judgments in criminal cases. The new language was placed in those sections of the Code dealing with direct appeals from final judgments disposing of cases. The General Assembly did not legislate with reference to collateral challenges or motions to correct illegal sentences or what is now Maryland Rule 4–345(a)."

*Id.* at 168, 642 A.2d 232 (citing *Telak v. State*, 315 Md. 568, 576, 556 A.2d 225 (1989)). Motions to modify sentences constitute collateral challenges to the trial court's original imposition of the sentence, and thus section 12–302(c) does not authorize

**598**

the State's appeal from the trial court's decision on the motion.[5] *See Telak*, 315 Md. at 575, 556 A.2d 225.

Furthermore, in *Cardinell*, the Court of Appeals addressed the State's right to appeal when the trial court lacked the authority to modify or reduce the defendant's sentence, and therefore imposed an illegal sentence. *Cardinell*, 335 Md. at 384, 387, 644 A.2d 11. There, the Court rejected the Court of Special Appeals's "broad interpretation of [section 12–302(c)(2) ] . . . that '[t]he legislature must have intended that the State have a right to appeal under circumstances such as these where a trial court imposed a sentence that was contrary to law.' " *Id.* at 387, 644 A.2d 11. Instead, the Court concluded that the legislature, in enacting 12–302(c)(2), did not create a statutory right in the State to appeal "when a court has exceeded its power." *Id.*

The fact that the legislature in section 12–302 codified "certain of the State's rights to appeal does not mean that it was intended to, or did, abolish the right of appeal to challenge a judgment that was beyond the jurisdiction of an inferior court." *Id.* at 397–98, 644 A.2d 11. The *Cardinell* Court, recognizing that "there must be some effective means of curtailing a trial judge who has gone completely beyond the bounds of judicial authority," held that "[t]he State has a continuing common law right to appeal an action that was outside the jurisdiction of the lower court. . . ." *Id.* The Court stated: "Judicial review applies, not just to correct legal errors, but to prevent the usurpation of power." *Id.* at 397, 644 A.2d 11.

 The trial court acts without jurisdiction when the court has "no inherent or common law authority, nor any authority by virtue of statute or rule, to reduce th[e] defen-

---

5. Nothing in this opinion should be construed to restrict the State's right, pursuant to section 12–302(c)(2), to directly appeal from a trial court's failure to impose a sentence specifically mandated by the Code. *See State v. Thurmond*, 73 Md.App. 686, 690, 536 A.2d 128 (1988) (trial court failed to impose the mandatory sentence set forth in article 27, section 643B).

dant's sentence . . . ." *Id.* at 391, 644 A.2d 11. For example, in *State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A.2d 573 (1974), the Court addressed the right of the State to appeal the circuit court's illegal suspension of a portion of a prison sentence. *Id.* at 504, 325 A.2d 573. There, the trial court suspended a portion of a five-year prison sentence for the use of a handgun in the commission of a felony. *Id.* The law, however, mandated the "imposition of 'no less than the minimum sentence of five years,' " and prohibited the suspension of a the mandatory minimum sentence. *Id.* The Court held that the State could

> appeal from the imposition of an illegal sentence, since the issue of the trial court's jurisdiction is involved in the sense of whether it exceeded the powers vested in it by prescribing a penalty contrary to law. A lower court which thus exceeds its power must be bridled by a court of last resort. Were it otherwise, mandates of the General Assembly could be defied with impunity and the only protection of the public would be the torturous process of judicial removal which would not have the effect of correcting the specific error.

*Sonner,* 272 Md. at 526, 325 A.2d 573. Thus, when the trial court exceeds its authority or powers, including "prescribing a penalty contrary to law," the common law grants the State the right to appeal the trial court's decision. *Id.*

 Here, the trial court exceeded its authority when it reduced appellee's sentence from twenty-five years to two concurrent ten year sentences. Article 27, sections 643B(a) and (c), as codified on 25 January 1994, mandated that appellee be sentenced to a minimum sentence of twenty-five years imprisonment. Given the sole reason for the sentence modification tendered by appellee and the circuit court, the trial court possessed no authority to deviate from this legislative mandate via the sentence modification/review process, and thus, the court acted in excess of its jurisdiction. Consequently, the common law authorizes the State's appeal.

SENTENCING OF 9 MAY 1997 VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR HOWARD

# 600

COUNTY WITH DIRECTIONS TO REIMPOSE A MANDATORY SENTENCE OF TWENTY–FIVE YEARS IMPRISONMENT WITHOUT PAROLE; APPELLEE TO PAY THE COSTS.