754 A.2d 1004

**Craig Nathaniel WEBSTER**

v.

**STATE of Maryland.**

**No. 41, Sept. Term, 1998.**

Court of Appeals of Maryland.

June 29, 2000.

466

John l. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, * RAKER, WILNER and CATHELL JJ.

BELL, Chief Judge.

The issue this case presents involves the State's right to appeal a trial court's reduction of a mandatory sentence, entered pursuant to Maryland Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.) Art. 27, § 643B(a),[1] which, at the time of

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of the Court but did not participate in the decision and adoption of this opinion.

1. That section provided:

"(a) *Crime of violence defined; correctional institution defined.*-As used in this section, the term 'crime of violence' means abduction; arson; burglary; daytime housebreaking under § 30(b) of this article; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming under §§ 384, 385, and 386 of this article; mur-

sentencing, included daytime housebreaking in the list of predicate crimes of violence, when, at the time of the reduction, that statute had been amended to delete that offense as a predicate offense. Important, if not critical to the resolution of that issue, is the propriety of the trial court's action. Rejecting the State's contention that it enjoyed a right of appeal pursuant to Maryland Code (1974, 1995 Repl.Vol.) § 12–302(c)(2),[2] of the Courts & Judicial Proceedings Article, *State v. Webster,* 119 Md.App. 585, 596, 705 A.2d 151, 157 (1998), the Court of Special Appeals held that the State had a common law right of appeal, which was authorized in that case, since

> "Given the sole reason for the sentence modification tendered by appellee and the circuit court, the trial court possessed no authority to deviate from this legislative mandate [that a mandatory sentence be imposed] via the sentence modification/review process, and thus, the court acted in excess of its jurisdiction."

*Id.* at 599, 705 A.2d at 158. We granted the petitioner's Petition for Writ of Certiorari. We shall reverse in part, and affirm in part.

---

der; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder, assault with intent to rape, assault with intent to rob, assault with intent to commit a sexual offense in the first degree, and assault with intent to commit a sexual offense in the second degree. The term 'correctional institution' includes Patuxtent Institution and a local or regional jail or detention center."

**2.** Maryland Code (1974, 1995 Repl.Vol.) § 12–302(c)(2) provided, as relevant:

※ ※ ※

"(c) In a criminal case, the State may appeal as provided in this subsection.

※ ※ ※

"(2)The State may appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code...."

I

The petitioner was convicted July 15, 1993 by a Howard County jury of daytime housebreaking and felony theft. At that time, daytime housebreaking was a crime of violence pursuant to § 643B (a). The State having both timely, in accordance with Maryland Rule 4–245,[3] notified the petitioner and the court of its intention to seek a mandatory sentence pursuant to Maryland Code (1957, 1996 Repl.Vol.) Art. 27, § 643B (c),[4] and established the predicate for the imposition of such sentence, the court, on January 25, 1994, merged the convictions and sentenced the petitioner to 25 years imprisonment without parole. On January 26, 1994, the day after the

---

3. Maryland Rule 4–245 provides in relevant part:

"(b) *Required Notice of Additional Penalties.* When the law permits but does not mandate additional penalties because of a specified previous conviction, the court shall not sentence the defendant as a subsequent offender unless the State's Attorney serves notice of the alleged prior conviction on the defendant or counsel before the acceptance of a plea of guilty or nolo contendere or at least 15 days before trial in District Court, whichever is earlier.

"(c) *Required Notice of Mandatory Penalties.* When the law prescribes a mandatory sentence because of a specified previous conviction, the State's Attorney shall serve a notice of the alleged prior conviction on the defendant or counsel at least 15 days before sentencing in circuit court or five days before sentencing in District Court. If the State's Attorney fails to give timely notice, the court shall postpone sentencing at least 15 days unless the defendant waives the notice requirement."

4. That section provides:

"(c) *Third conviction of crime of violence.*—Except as provided in subsections (f) and (g) of this section, any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, shall be sentenced, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. The court may not suspend all or part of the mandatory 25–year sentence required under this subsection, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion."

petitioner was sentenced, Senate Bill 322 was introduced. That bill proposed to delete daytime housebreaking, among other offenses, from the list of crimes of violence, set out in § 643B (a), for the purpose of imposing mandatory minimum penalties on subsequent offenders. Thereafter, the petitioner timely filed, pursuant to Rule 4–345(b),[5] a Motion for Modification or Reduction of Sentence. Subsequently, Senate Bill 322 was enacted, effective October 1,1994. *See* 1994 Md. Laws, Chap. 712. Just as had been proposed, the bill removed daytime housebreaking from § 643B(a) as a crime of violence for purposes of § 643B(c).

The trial court held a hearing on the petitioner's motion to modify or reduce his sentence on December 19, 1996 and, based on amended § 643B (a), on May 9, 1997, vacated the mandatory sentence it earlier had imposed, in favor of concurrent ten year sentences for the housebreaking and theft convictions. The State noted an appeal to the Court of Special Appeals pursuant to Maryland Code (1973, 1997 Repl.Vol.) § 12–302(c)(2), of the Courts & Judicial Proceedings Article. That court issued an opinion reinstating the mandatory sentence. *Webster*, 119 Md.App. at 599, 705 A.2d at 158. We granted the Petition for Writ of Certiorari, which the petitioner filed in this Court, to consider the important issues this case presents. *Webster v. State*, 350 Md. 274, 711 A.2d 867 (1998).

---

**5.** Rule 4–345 reads in relevant part:

\* \* \* \*

"(b) *Modification or Reduction—Time for.* The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake or irregularity, or as provided in sentence after sentence, has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding."

II

The petitioner argues that the Court of Special Appeals erred in holding that the State had any right to appeal the trial court's order granting the petitioner a reduction of sentence. Specifically, the petitioner asserts that the State had no statutory right of appeal. He argues that, under § 12–302(c)(2) of the Courts & Judicial Proceedings Article, the State may appeal final judgments only. With this, the Court of Special Appeals agreed. *Webster,* 119 Md.App. at 596, 705 A.2d at 157. In addition, the petitioner rejects the State's claim that it has a common law right of appeal in this case. The trial court had jurisdiction to hear the timely filed motion for reconsideration, and the legality of the sentence imposed, the petitioner argues, may be addressed by either the doctrine of plain error or by the inherent power of an appellate court to correct error. Next the petitioner argues it was error to hold that the trial court had no authority to reduce his sentence and impose a sentence that was lawful at the time of resentencing. Although the sentence on resentencing would not have been lawful when the petitioner's initial sentence was imposed, the petitioner submits that, because resentencing took place after the effective date of the revision to § 643B (a), the trial court was not obliged to reimpose the mandatory sentence.

Also, the petitioner maintains that Maryland Rule 4–345(b) gives the trial court broad discretion to revise a defendant's sentence; thus, the petitioner concludes on that basis as well, that imposition of a lesser sentence under the revised § 643B (a) was proper.

The State argues that the petitioner's initial sentence was not subject to reinterpretation, that the trial court had no authority to reduce a sentence legally imposed pursuant to mandatory sentencing provisions, simply because the Legislature amended those provisions to remove the qualifying conviction. This is so, it argues, because § 643B (a), as amended,

is, by its terms, prospective in operation, and clearly so,[6] and, therefore, limits the court's ability to impose more lenient sentences on those defendants initially sentenced before its effective date.

## III

We must first decide whether the State may appeal when it alleges that the court exceeded its authority in sentencing the defendant. The petitioner maintains, relying on *Telak v. State*, 315 Md. 568, 556 A.2d 225 (1989), and *Chertkov v. State*, 335 Md. 161, 642 A.2d 232 (1994), that the State may not. In *Telak*, we held that the State's appeal, pursuant to Maryland Code (1974, 1984 Repl.Vol.) § 12–401(a)[7] of the Courts and Judicial Proceedings Article, filed more than 30 days after the judge rendered a verdict, was untimely. 315 Md. 568, 556 A.2d 225. There, the defendant was convicted of Driving Under the Influence, but, notwithstanding that the defendant previously had been placed on probation before judgment, in violation of Maryland Code (1957, 1984 Repl.Vol.) Art. 27, § 641(a)(2),[8] the trial court struck the guilty verdict

---

6.  Section 3, 1994 Maryland Laws, Chapter 712 provides:
    "That the changes that are made to Article 27, § 643B of the Code by this Act shall apply prospectively only to defendants who are sentenced after the effective date of this Act and may not be construed to apply in any way to defendants who are sentenced before the effective date of this Act."

7.  That section provides:
    "(a) *Civil and criminal cases.*—A party in a civil case or the defendant in a criminal case may appeal from a final judgment entered in the District Court. In a criminal case, the State may appeal from a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended."

8.  As relevant, Maryland Code (1957, 1984 Repl.Vol.) Art. 27, § 641(a)(2) provided:
    "(a)(1)(i)1. Whenever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolo contendere plea, may stay the entering

and imposed probation before judgment. *Id.* at 569, 556 A.2d at 225. Rather than appealing the court's action, the State filed a motion to correct an illegal sentence. Only after that motion was denied did the State file an appeal pursuant to § 12–401. By then, however, the 30 day appeal period had expired. The State argued that its appeal was timely because it was filed within 30 days of the denial of its collateral motion. *See id.* at 574, 556 A.2d at 228. Examining the legislative history of §§ 12–401 and 12–302, we rejected the State's argument that the 30 day deadline for filing an appeal started to run after the collateral motions timely filed in the case had been decided. Concluding that "an order placing a defendant on probation before judgment . . . was a final judgment in the criminal case for purposes of appeal," *id.* at 577, 556 A.2d at 229, we stated:

"The language and the framework of Ch. 49 of the Acts of 1976 demonstrate that the appealable order is the order which imposes a sanction upon the defendant and which ordinarily represents a disposition of the criminal case. The final judgment in a criminal case consists of the verdict and, except where there is an acquittal, the sanction imposed, which is normally a fine or sentence of imprisonment or both. *See e.g., Christian v. State,* 309 Md. 114, 119, 522 A.2d 945 (1987); *Jones v. State,* 298 Md. 634, 637, 471 A.2d 1055, 1057 (1984); *Sigma Repro. [Reproductive] Health Cen. v. State,* 297 Md. 660, 665, 467 A.2d 483, 485 (1983); *Lewis v. State,* 289 Md. 1, 4, 421 A.2d 974, 977 (1980); *Langworthy v. State,* 284 Md. 588, 596, 399 A.2d 578, 583 (1979). An order denying a later motion to correct an

of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate. . . .

\* \* \* \*

"(2) Notwithstanding paragraph (1) of this subsection, a court may not stay the entering of judgment and place a person on probation for a violation of any provision of § 21–902 of the Transportation Article if the person has been convicted under, or has been placed on probation under this section after being charged with a violation of, § 21–902 of the Transportation Article within the preceding 5 years."

illegal sentence is not the final judgment in the criminal
case."

*Id.* at 575–76, 556 A.2d at 228–29.  Based on this reasoning
and citing *Valentine v. State*, 305 Md. 108, 501 A.2d 847 (1985),
*overruled, State v. Kanaras*, 357 Md. 170, 184, 742 A.2d 508,
516 (1999), the petitioner argues that no right of appeal would
lie from the allegedly illegal granting of a collateral motion
such as the defendant's motion for reconsideration of sen-
tence.[9]

---

**9.**  In *Valentine v. State*, 305 Md. 108, 120, 501 A.2d 847, 853 (1985), we
held that:

"The motion [to correct an illegal sentence] is in the nature of a
collateral attack.  An appeal from its denial is not a direct appeal
from the original sentence.  The refusal of a trial judge to correct an
illegal sentence can only reach the appellate courts when the proce-
dures of the Uniform Post Conviction Procedure Act are followed.
"There is no denial here of due process.  The Post Conviction
Procedure Act provides means for litigating the propriety of the
sentence and ultimate bridling by this Court, if such be necessary, of
a recalcitrant judge who refuses to correct an illegal sentence.  Like-
wise, there is no denial of equal protection to such individuals.  They
have a right of direct appeal when an illegal sentence is imposed at
the time of original sentencing, the same right accorded to the State
by *[State ex rel.] Sonner [ v. Shearin]*, 272 Md. 502, 325 A.2d 573
[(1974)], and ultimately in Code (1974, 1984 Repl.Vol.) § 12–
302(c)(2), Courts and Judicial Proceedings Article."

In overruling *Valentine*, this Court rejected the reason for its non-
appealability holding—"the view that a motion to correct an illegal
sentence, authorized by Rule 4–345(a), is a 'statutory remed[y] ... for
challenging the validity of incarceration under sentence of ... impris-
onment' within the meaning of subsection (e) of the Post Conviction
Procedure Act, Art. 27, § 645A(e)," *State v. Kanaras*, 357 Md. 170, 183,
742 A.2d 508, 515 (1999)—noting,

' "a motion to correct an illegal sentence is not a 'statutory' remedy.
Statutes are enacted by the General Assembly of Maryland.  The
Maryland Rules are adopted by the Court of Appeals.  As the Wilson
court noted, the Maryland Constitution does provide that rules
adopted by the Court 'shall have the force of law until rescinded,
changed or modified by the Court of Appeals or otherwise by law.'
Maryland Constitution, Art. IV, § 18(a).  Nonetheless, the fact that
the Maryland Rules have the force of law does not mean that a rule is
a statute." '

*Id.* at 183, 742 A.2d at 515–16, *quoting Valentine*, 305 Md. at 123, 501
A.2d at 854 (Eldridge, J. dissenting).  We held, overruling in the
process, in addition to *Valentine, Harris v. State*, 241 Md. 596, 217 A.2d
307 (1966); *Burley v. State*, 239 Md. 342, 211 A.2d 714 (1965); *Wilson*

The petitioner also relies on *Chertkov,* on which the State, interestingly, relies for the opposite proposition. In that case, we held that the State's appeal pursuant to § 12–302(c)(2) was improper where the sentence its appeal challenged was one allowed by Maryland law. At issue in *Chertkov* was the trial court's modification of a sentence entered pursuant to a written plea agreement which contemplated a specific sentence. 335 Md. at 165, 642 A.2d at 234. After the defendant had pled guilty and the agreed sentence had been imposed, she timely filed, pursuant to Maryland Rule 4–345(b), a motion for reconsideration of that sentence. The court granted the motion more than 90 days later, after she had served the unsuspended portion of the sentence, striking the previously entered guilty findings and imposing probation before judgment. *Id.* at 165, 642 A.2d at 234. On appeal, the State argued that the court's modification of the sentence was an extrajudicial act, in that the court failed to impose a sentence specifically mandated by the Code. *Id.* at 166, 642A.2d at 234–5. Rejecting that argument, we explained:

> "The trial court sentenced the petitioner in accordance with the parties' plea agreement. That sentence was not illegal and, hence, the State, could not allege at that time, 'that the trial judge failed to impose the sentence specifically mandated by the Code, or in conformity with the Maryland Rules of Procedure.' That allegation could only have been made after the trial court modified the sentence. That occurred long after the appeal time for challenging the original sentence had expired."

*Id.* at 168, 642 A.2d at 235.

A decisive factor in our decision in *Chertkov,* as the State points out, was that the sentence being appealed in that case, "fell within the permitted range of sentences for the particular offense; but for the plea agreement, the modified sentence

*v. State,* 227 Md. 99, 175 A.2d 775 (1961); and *Brady v. State,* 222 Md. 442, 160 A.2d 912 (1960), "that the language of the Post Conviction Procedure Act does not preclude an appeal from a circuit court' s ruling under Rule 4–345." *Id.* at 184, 742 A.2d at 516.

would be immune from attack on illegality grounds." *Id.* at 170, 642 A.2d at 236. On that point, we said:

"[S]ection 12–302(c)(2) 'specifie[d] the type of illegality which must be alleged for the State to be entitled to appeal.' *Telak*, 315 Md. at 574, 556 A.2d at 228. And it did so clearly and unambiguously; when it referred to a failure to impose the sentence specifically mandated by the Code, it was not referring to the Maryland Rules or anything else other than the statutory law of this State. There is no justification, therefore, for expanding the meaning of section 12–302(c)(2) to encompass more."

*Id.* at 169, 642 A.2d at 236.

The case sub judice is identical to the factual posture in *Chertkov* and distinguishable from that in *Telak* in a critical respect. Here, the collateral motion, the motion for reconsideration, was granted, and resulted in the imposition of a new sentence. Therefore, unlike the case in *Telak*, this case does not involve an appeal from the denial of such a motion. As the State points out, "the action of the trial court served to alter the sentence previously imposed upon [the petitioner]." This Court has recognized that the modification of a defendant's sentence revises the final judgment previously entered, although it does not result in the entry of a wholly new judgment. *See Johnson v. State*, 274 Md. 29, 41, 333 A.2d 37, 43–44 (1975). Assessment of a new sentence resurrects the penalty portion of a judgement; it replaces the prior sentence. The new sentence "imposed a sanction upon the defendant and ... represents a disposition of the criminal case." *Telak* at 575, 556 A.2d at 228. Thus, the sentence imposed as a result of the granting of the motion for reconsideration is the appealable order, and the State, under § 12–302(c), properly and timely filed its appeal.[10]

---

**10.** This is consistent with the State's position, that it is entitled to appeal under § 12–302(c)(2), since it is challenging whether, under the circumstances and in light of the provision of Section 3, 1994 Maryland Laws, Chapter 712 that "the changes that are made to Article 27, § 643B ... by this Act shall apply prospectively only to defendants who are sentenced after Oct. 1, 1994 and may not be construed to apply in

Because we conclude that the State has a right of direct appeal, we do not reach, or address, its alternative argument that, under *Cardinell v. State*, 335 Md. 381, 644 A.2d 11 (1994),[11] the State has a common law right of appeal.

## IV.

We now address whether the Legislature intended that the mandatory sentences imposed in accordance with § 643B (a) before its amendment be inviolate notwithstanding that amendment and its purpose. The purpose of amending § 643B is stated in a Committee Note, as follows:

"[The deletion of daytime housebreaking from the definition of 'crime of violence'] is a substantive change that is intended to enhance the fairness and uniformity of sentencing practices in the State. The Committee believes that the mandatory minimum sentences established in this section should be applicable only to crimes against persons or crimes that directly involve a threat to human life. In addition, the deletion of the crime of daytime housebreaking is a logical change because this bill eliminates the distinction between daytime and nighttime housebreaking and doubles the penalty for this offense. See new § 29. Under Section 3 of this bill, this change will apply prospectively to cases in which a defendant is sentenced after the effective date of the bill."

---

any way to defendants who are sentenced before Oct. 1, 1994," the sentence on resentencing is one "specifically mandated by the Code." Contrasting the factual posture of *Telak* with that of the case sub judice and noting that this Court in *Cardinell v. State*, 335 Md. 381, 396, 644 A.2d 11, 18 (1994), referred to the trial court's modified sentence as a final judgment, the State submitted that "the action of the trial court served to alter the sentence previously imposed upon Webster. Therefore, the court's action constituted a final judgment for purposes of appeal under the statute."

11. In *Cardinell v. State*, 335 Md. 381, 387, 644 A.2d 11, 14 (1994), after confirming that § 12–302(c)(2), applying only to final judgments, did not codify a right of the State to appeal an illegal sentence, we held that the State enjoyed a common law right to appeal where the trial court modified a sentence contrary to a Maryland Rule.

Laws of Maryland (1994) 3158–59. Also of critical importance is the meaning of § 3 of Chapter 712, providing "that the changes that are made to Article 27, § 643B of the Code by this Act shall apply prospectively only to defendants who are sentenced after the effective date of this Act and may not be construed to apply in any way to defendants who are sentenced before the effective date of this Act," in particular, the word, "sentence." That is a question of statutory construction. The applicability of Maryland Code (1957, 1996 Repl. Vol.) Art. 1, § 3,[12] the general savings clause, to this case must be considered as well. We shall hold that the Legislature did intend for the modified statute to apply to all sentences occurring after its effective date.

a.

The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature. *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998); *Gordon Family Partnership v. Gar on Jer*, 348 Md. 129, 137, 702 A.2d 753, 757 (1997); *Harris v. State*, 344 Md. 497, 510, 687 A.2d 970, 976, *cert. denied, sub nom.*

---

**12.** Maryland Code (1957, 1996 Repl. Vol.) Art. 1, § 3 provides:

"The repeal, or the repeal and reenactment, or the revision, amendment or consolidation of any statute, or of any section or part of a section of any statute, civil or criminal, shall not have the effect to release, extinguish, alter, modify or change, in whole or in part, any penalty, forfeiture or liability, either civil or criminal, which shall have been incurred under such statute, section or part thereof, unless the repealing, repealing and reenacting, revising, amending or consolidating act shall expressly so provide; and such statute, section or part thereof, so repealed, repealed and reenacted, revised, amended or consolidated, shall be treated and held as still remaining in force for the purpose of sustaining any and all proper actions, suits, proceedings or prosecutions, civil or criminal, for the enforcement of such penalty, forfeiture or liability, as well as for the purpose of sustaining any judgment, decree or order which can or may be rendered, entered or made in such actions, suits, proceedings or prosecutions imposing, inflicting or declaring such penalty, forfeiture or liability."

In *State v. Johnson*, 285 Md. 339, 345, 402 A.2d 876, 879 (1979), we interpreted this provision "as saving any penalty, forfeiture or liability incurred under a statute which is subsequently repealed or amended unless the repealing act expressly provides otherwise."

*Koenig v. Maryland,* 522 U.S. 1017, 118 S.Ct. 605, 139 L.Ed.2d 492 (1997). The process of statutory construction is straight-forward and, when the statute is clear and unambiguous, requires resort only to the words of the statute. *Blitz v. Beth Isaac Adas Israel Congregation,* 352 Md. 31, 39, 720 A.2d 912, 916 (1998). When that is the case—when, giving the words of the statute their ordinary and natural meaning, *see Gardner v. State,* 344 Md. 642, 647–48, 689 A.2d 610, 612–13 (1997), the meaning of the statute is clear—and that meaning is consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, the search for legislative intent is at an end. *Lewis,* 348 Md. at 653, 705 A.2d at 1131. On the other hand, where the meaning of the plain language of the statute, or the language itself, is unclear, "we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Id.* at 653, 705 A.2d at 1131. We have explicated the rules applicable when resort to surrounding circumstances is required:

"When the words of a statutory provision are reasonably capable of more than one meaning, and we examine the circumstances surrounding the enactment of a legislative provision in an effort to discern legislative intent, we interpret the meaning and effect of the language in light of the objectives and purposes of the provision enacted. *Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675, 678 (1994); *see Kaczorowski v. [Mayor and City Council] of Baltimore,* 309 Md. 505, 513–16, 525 A.2d 628, 632–33 (1987). Such an interpretation must be reasonable and consonant with logic and common sense. *Armstead v. State,* 342 Md. 38, 56, 673 A.2d 221, 229 (1996). In addition, we seek to avoid construing a statute in a manner that leads to an illogical or untenable outcome. *Greco [v. State],* 347· Md. [423,] 429, 701 A.2d [419,] 422 [ (1997)]; *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052, 1062 (1996)." *Id.* at 654, 705 A.2d at 1131. While we have defined "ambiguity" as "reasonably capable of more than one meaning," *Greco*

*v. State,* 347 Md. 423, 429, 701 A.2d 419, 421 (1997), we have also recognized that "[l]anguage can be regarded as ambiguous in two different respects: 1) it may be intrinsically unclear . . .; or 2) its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain." *Gardner v. State,* 344 Md. 642, 648–49, 689 A.2d 610, 613 (1997), *quoting Bernhardt v. Hartford Fire Ins. Co.,* 102 Md.App. 45, 54, 648 A.2d 1047, 1051 (1994) (*quoting Town & Country v. Comcast Cablevision,* 70 Md.App. 272, 280, 520 A.2d 1129, 1132, *cert. denied,* 310 Md. 2, 526 A.2d 954 (1987)). Thus, a term which is unambiguous in one context may be ambiguous in another. *See Sullins v. Allstate,* 340 Md. 503, 508, 667 A.2d 617, 619 (1995); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 74, 517 A.2d 730, 732 (1986).

An ambiguity in a criminal penal statute, in accordance with the rule of lenity, ordinarily is to be construed against the State and in favor of the defendant. *See Gardner,* 344 Md. at 651, 689 A.2d at 614; *Wynn v. State,* 313 Md. 533, 539, 546 A.2d 465 (1988); *Johnson v. State,* 75 Md.App. 621, 631, 542 A.2d 429, *cert. denied,* 316 Md. 675, 561 A.2d 215 (1989). In other words, courts are prohibited from extending "punishment to cases not plainly within the language" of the statute. *State v. Archer,* 73 Md. 44, 57, 20 A. 172, 172 (1890). *See Gargliano,* 334 Md. at 437, 639 A.2d at 679. For the rule of lenity to be applicable, the statute being interpreted need not itself be a penal statute; what is required is that the interpretation given the statute have a significant impact on the sentence that the defendant receives. *See Maryland House of Correction v. Fields,* 348 Md. 245, 267, 703 A.2d 167, 178 (1997) (applying the rule of lenity in construing a statute dealing with good-conduct credits).

b.

At the outset, we must decide whether the general savings clause applies to the case *sub judice.* The State maintains that it does apply and, therefore, "the applicable penal law continues to be that which was in effect at the time of sentencing." Accordingly, it concludes that the trial court

had no authority to modify the petitioner's mandatory sentence. The petitioner, on the other hand, argues that the general savings clause is inapplicable by its very terms. Acknowledging that it provides that, in the absence of a provision in the revised statute so providing, a revision of a statute would not affect any penalty already incurred, the petitioner submits that that is the situation here, that the revising statute "expressly so provides." He points out that § 3 of Chapter 712 expressly saves the mandatory sentence under the prior statute only in the case of those defendants who were sentenced before October 1, 1994.

It is clear that the Legislature's intent was that the amendment deleting daytime housebreaking from the list of crimes of violence in § 643B "apply prospectively only." It went on, however, to define what it intended by use of the term "prospective" and it did so by reference to when the defendant was sentenced—if the defendant was sentenced before the effective date of the act, the sentence imposed at that time was "saved," the amendment would have no applicability to him or her, but if the defendant was sentenced after the effective date of the act, the amendment would apply and the defendant's sentence would so reflect. Since the Legislature made prospectivity to depend upon the date of the defendant's sentencing, the critical question is the meaning of the word, "sentence," as used in § 3 of Chapter 712.

c.

The meaning of "sentence" in the criminal context is clear—it refers to the act of the court in pronouncing sentence, announcing the sanction that is being imposed on the defendant. It is that part of the final judgment that postdates the rendition of a verdict of guilty. But a trial court may modify a sentence. *See* Maryland Rule 4–345(b),[13] which gives a Circuit

---

13. Rule 4–345(b) provides:
   "(b) *Modification or Reduction—Time for.* The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not

Court "revisory power and control over a sentence upon a motion filed within 90 days after its imposition ... (2) ... whether or not an appeal has been filed." That raises the question of how the court's action in modifying a sentence is characterized, a question that we must address because the answer is relevant to the construction of § 3, Chapter 712. If a modification of sentence is a resentencing and, thus, a sentencing, § 3 is ambiguous—the statute does not purport to distinguish between initial sentencings and those occurring after modification of a previously imposed sentence—thus implicating the rule of lenity. In that event, the rule of lenity would mandate a construction in favor of the petitioner and against the State.

Although it has not before confronted this issue, this Court has addressed the effect of a modification of sentence in various contexts. In *Greco v. State,* 347 Md. 423, 701 A.2d 419, this Court held:

"Consonant with Rule 4–345(b), a criminal defendant may file a request for modification or reduction of sentence within 90 days of the imposition of that sentence. If the sentencing court grants a motion for modification and reduces the sentence, this subsequent sentence then becomes the effective sentence. *See Madison v. State,* 205 Md. 425, 435, 109 A.2d 96, 100–01 (1954) (concluding that a motion to modify must be timely in order to 'strike out' the original sentence); *Hurwitz v. State,* 200 Md. 578, 581, 92 A.2d 575, 576 (1952) ('On motion of appellant, this sentence was stricken out, and he was resentenced....'); *Czaplinski v.*

---

been perfected, and (2) in a circuit court, whether or not an appeal has been filed. The court may modify or reduce or strike, but may not increase the length of, a sentence. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding."

*Warden,* 196 Md. 654, 655–56, 75 A.2d 766, 766–67 (1950) (noting that the original sentence 'was reconsidered and stricken out . . . and the applicant was re-sentenced'); *Collins v. State,* 69 Md.App. 173, 193, 516 A.2d 1015, 1025 (1986) ('The effect of the modified or clarified sentence was to strike out the [initial] sentence and any infirmity attaching to it.'), *cert. denied,* 308 Md. 572, 520 A.2d 1328 (1987). Thus, a reimposition of sentence in these circumstances is the equivalent of an 'imposition' [of] sentence under Maryland Rule 4–345(b). Accordingly, we hold that when a sentencing court grants a timely request for modification or reduction of sentence, the defendant may file another request for modification or reduction of sentence within 90 days of the date of the subsequent imposition of sentence."

*Id.* at 433, 701 A.2d at 424. The issue in that case was whether a motion to modify a sentence was timely if filed more than 90 days after the original imposition of sentence, but within 90 days of the granting of a motion to modify the original sentence. *Id.* at 428, 701 A.2d at 421. In answering that question, we focused on the meaning of "imposition" as used in Rule 4–345(b), *id.,* and rejected the State's alternative arguments that the unambiguous language of the rule contemplates that "a sentence can only be 'imposed' once" and that, if ambiguous, the history and purpose of the rule indicate that a motion to modify must be filed within 90 days of the initial imposition of sentence, rather than a subsequent modification. *Id.* at 427–28, 701 A.2d at 421.

Noting that "[p]rior Maryland case law strongly suggests that the modification of a sentence under Maryland Rule 4–345(b) is an imposition of sentence for the purposes of that rule," *id.* at 429, 701 A.2d at 422, the Court discussed *McDonald v. State,* 314 Md. 271, 550 A.2d 696 (1988) and *Collins v. State,* 321 Md. 103, 105, 581 A.2d 426, 427 (1990), *appeal after remand,* 326 Md. 423, 605 A.2d 130 (1992), concluding that they confirmed the suggestion. *Greco,* 347 Md. at 432, 701 A.2d at 423. Moreover, it concluded that

"In interpreting Rule 4–345(b), no sound basis exists to distinguish between the reimposition of a sentence subsequent to the revocation of probation, and the reimposition of a sentence subsequent to the granting of a motion to modify the original sentence."

*Id.* at 432–33, 701 A.2d at 423.

The question presented in *McDonald* was whether "a circuit court's authority to review, de novo, a District Court's revocation of probation extend to a de novo determination of disposition." There, a judge of the District Court placed McDonald on probation, which the judge later revoked, directing execution of the sentence originally suspended. 314 Md. at 273, 550 A.2d at 696–97. McDonald's appeal of the revocation of probation judgment was heard *de novo* in the Circuit Court, which affirmed the finding that she had violated probation, but refused her request for *de novo* hearing on disposition, believing that only alleged violations were subject to de novo review. *Id.* at 273, 550 A.2d at 697. For the same reason, the court denied McDonald's Rule 4–345(b) motion for modification of sentence. *Id.* at 284, 550 A.2d at 702. The Court held that *de novo* review of a probation violation in the Circuit Court extends to disposition as well as to the determination whether the violation occurred. *Id.* at 277–78, 550 A.2d at 699. Although that resolved the appeal, we addressed McDonald's contention that it was error for the Circuit Court to deny her motion for modification, concluding, consistent with its holding, that the revocation of her probation returned McDonald to her original sentencing status, with the result that " '[b]ecause Rule 4–345(b) applies to any sentence, it must apply to a sentence which is imposed following a revocation of probation.' " *Id.* at 284, 550 A.2d at 702, *quoting Coley v. State,* 74 Md.App. 151, 156, 536 A.2d 1166, 1169 (1988). The Court reasoned:

"Whether the hearing judge reimposes the original sentence or imposes a new sentence, the effect under Rule 4–345(b) remains the same; the 90–day period runs from the time any sentence is imposed or reimposed upon revocation of

probation, and the court retains the authority to modify that sentence as the rule provides."

*Id.* at 285, 550 A.2d at 702.

*Collins* involved the interplay between the execution of a previously suspended sentence following a revocation of probation and a defendant's right to review of sentence by a three judge panel, *see* Maryland Code (1957, 1987 Repl.Vol.) Art. 27, §§ 645JA–645JG [14] and Maryland Rule 4–344.[15] Specifically, the question was whether an application for review of a sentence by a three judge panel filed within 30 days of the order of a previously suspended sentence is timely. 321 Md. at 104, 581 A.2d at 426. Collins was convicted of assault and battery and given a ten year sentence, a portion of which was suspended, in favor of a term of probation. While on bail pending appeal, he was convicted of another offense, for which he received probation and, as a result, he was found in violation of the first probation, which then was revoked and the previously suspended sentence was directed to be executed. *Id.* at 105, 581 A.2d 426, 581 A.2d at 426. Thereafter,

---

**14.** Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 645JA, as relevant, provides:

"(a) Unless the sentence was imposed by more than one trial judge, every person convicted of a crime by any trial court of this State and sentenced to serve, with or without suspension, a total of more than two years imprisonment in any penal or correctional institution in this State shall be entitled to have the sentence reviewed by a panel of three or more trial judges of the judicial circuit in which the sentencing court is located. However, a person has no right to have any sentence reviewed more than once pursuant to this section. Notwithstanding any rule of the Court of Appeals to the contrary, the judge who sentenced the convicted person shall not be one of the members of the panel, but if he so desires he may sit with the panel in an advisory capacity only."

**15.** Maryland Rule 4–344 provides, in part:

"(a) Application—When Filed. Any application for review of a sentence under the Review of Criminal Sentences Act, Code, Article 27, §§ 645JA–645JG, shall be filed in the sentencing court within 30 days after the imposition of sentence or at a later time permitted by the Act. The clerk shall promptly notify the defendant's counsel, if any, the State's Attorney, and the Circuit Administrative Judge of the filing of the application."

Collins sought review of that sentence by a three judge panel, by filing an application therefor within 30 days of the order directing execution of sentence. The application was denied on the basis of a "finding that the application was untimely, it not having been filed within 30 days of the original imposition of sentence." *Id.* at 105–06, 581 A.2d at 426–27. The Court of Special Appeals having affirmed, *Collins v. State,* 77 Md.App. 456, 550 A.2d 743 (1988), this Court reversed. Although recognizing that there is no right to more than one sentence review by a three judge panel, see § 645JA (a), *citing McDonald* and *Coley,* while noting that "imposition of sentence" means the same in both Rule 4–344 and Rule 4–345, *id.* at 109, 581 A.2d at 428, it held that "the legislature intended to allow sentence review either following the imposition of the original sentence or following the [order directing the execution] of a previously suspended sentence." *Id.* As we did in *McDonald, see* 314 Md. at 284, 550 A.2d at 701, the Court adopted as rationale what the intermediate appellate court said in *Coley,* 74 Md.App. at 156, 536 A.2d at 1169 (*quoting Brown v. State,* 62 Md.App. 74, 77, 488 A.2d 502, *cert. denied,* 303 Md. 42, 491 A.2d 1197 (1985)):

> "when a probation is revoked, the hearing court is returned 'to the same position it occupied at the original sentencing of the defendant with one exception; the court may not impose a sentence greater than that which was originally imposed and suspended.' It follows that if an order revoking a defendant's probation returns the hearing judge to the original sentencing status, then any sentence so imposed must have the effect of an original sentence."

321 Md. at 110, 581 A.2d at 429.

#### d.

From the foregoing, it is clear that, at best, § 3 of Chapter 712 is ambiguous, requiring application of the rule of lenity. This Court has interpreted "sentence" to refer to the initial imposition of sentence, following the rendition of the verdict, as well as to the imposition of sentence following a modification of sentence. The Legislature is presumed to have acted

with knowledge of that fact. *See State v. Sowell,* 353 Md. 713, 725, 728 A.2d 712, 718 (1999); *State v. Wiegmann,* 350 Md. 585, 606, 714 A.2d 841, 851 (1998); *Giffin v. Crane,* 351 Md. 133, 154, 716 A.2d 1029, 1040 (1998); *Romm v. Flax,* 340 Md. 690, 698, 668 A.2d 1, 4 (1995). Had its intent been otherwise, the Legislature could have avoided the ambiguity by defining prospectivity using another marker or by making it apply only to defendants "initially sentenced" after the Act's effective date. It follows, therefore, that the judgment of the Court of Special Appeals must be reversed.

This result is consistent with the Legislature's intent as expressed in the Committee Note—to enhance the fairness and uniformity of sentencing practices and to limit the mandatory minimum sentences of § 643B (c) only to crimes against persons or crimes that directly involve a threat to human life.[16]

---

**16.** It has always been the case that Maryland Code (1957, 1992 Repl. Vol.) Art. 27, § 643B and the mandatory minimum sentences it prescribes apply only to crimes against persons or crimes that directly involve a threat to human life. *See State v. Taylor,* 329 Md. 671, 675, 621 A.2d 424, 426 (1993); *Hawkins v. State,* 302 Md. 143, 148, 486 A.2d 179, 182 (1985); *Minor v. State,* 313 Md. 573, 576, 546 A.2d 1028, 1029 (1988).

Enacted in 1975, Art. 27, § 643B was added to the Crimes and Punishments Article "(f)or the purpose of requiring the imposition of a mandatory sentence of life imprisonment for any person convicted ...subsequent to that person having served three separate terms of imprisonment...." *See* 1975 Md. Laws, Chap. 253, Preamble. Originally, it consisted of only two subsections (Emphasis added):
" § 643B.
"(a) As used in this section, the term "crime of violence" means abduction; arson; kidnapping; murder; rape; and robbery; or an attempt to commit any of these offences.
"(b) Any person who has served three separate terms of confinement in a correctional institution ... as a result of three separate *convictions of any crime of violence* shall be sentenced, *on being convicted a fourth time of a crime of violence,* to life imprisonment without the possibility of parole. Regardless of any other law to the contrary, the provisions of this section are mandatory."
The crimes enumerated in § (a) indicate that the Legislature was concerned with those crimes with the highest potential for violence. The statute was amended in 1977 by adding new sections (c) and (d), providing "new and different alternatives for dealing with aggressive and violent offenders ...[and] a minimum mandatory sentence for

As we have seen, although the Legislature gave Chapter 712 a prospective effect, it chose, apparently deliberately so, not to make it absolutely prospective, thus evidencing an intention that not all defendants who committed daytime housebreaking before the effective date of amended § 643B (c) would be subject to the mandatory minimum sentences that statute prescribes. As the petitioner puts it, Chapter 712 "was written to enable some defendants whose principal crime predated October 1, 1994, to avoid the much harsher punishment that prevailed at the time."

Indeed, construing Chapter 712 as the State urges will lead to unreasonable and illogical results, which are inconsistent with State sentencing practices as well. If the State is correct and a daytime housebreaking sentence once imposed pursuant to § 643B (c) is inviolate, whether a defendant is subject to a mandatory minimum sentence will depend on such vagaries as

---

certain persons who have been convicted of three violent crimes." *See* 1977 Md. Laws, Chap. 678, Preamble.

Daytime housebreaking and other burglary-related offenses were added to the list of crimes of violence in 1982. *See* 1982 Md. Laws, Chap. 479, where the legislative rationale was stated:

"Daytime housebreaking [was] elevated to violent crimes because it often becomes so, especially when the breaker is confronted or trapped in the house by the owner or police. It is a very common and traumatic type of crime for which we felt increased penalties were warranted for second and subsequent offenses, the same as for abduction, arson, burglaries, kidnapping, murder, rape, robbery, RWDW, etc."

*See* HB 241 (1982). In accord with the legislative determination that daytime housebreaking carried a "risk of personal harm and [that individuals enjoyed] the right to be free of intrusion," *State v. Davis,* 310 Md. 611, 635, 530 A.2d 1223, 1235 (1987), we declined to reverse daytime housebreaking convictions on grounds of disproportionality or cruel or unusual punishment, on several occasions. *See e.g. Minor v. State,* 313 Md. 573, 546 A.2d 1028 (1988). Over time, legitimate concerns surfaced about the disproportionate nature of the sentences meted out for daytime housebreaking convictions and potential Eighth Amendment implications. *See Davis,* 310 Md. 611, 530 A.2d 1223.

Twelve years later in 1994, the Legislature changed its earlier decision regarding daytime housebreaking by making both stylistic and substantive changes to the statutory laws governing burglary and related offenses, thereby decreasing the minimum mandatory penalties that recidivists, such as the petitioner, would face. *See* 1994 Md. Laws, Chap. 712.

the scheduling practices of the various courts of the State, the timing of the sentencing hearings or, even, the ability of a defendant to delay or avoid sentencing. If the date of sentencing is etched in stone, as the State urges, a defendant who fails to appear and is able to avoid capture until the effective date of the act would avoid the mandatory minimum sentence, while the defendant who cooperates would not.

e.

As it did in *Greco*, the State relies on *Johnson v. State*, 274 Md. 29, 333 A.2d 37, for the proposition that a reduced or reviewed sentence is not the imposition of a new sentence, a proposition that it maintains this Court has "expressly recognized." At issue in that case was the interpretation of Rule 764b2, the predecessor to Rule 4–345(b).[17] That issue was presented on the following facts. Johnson was convicted of assault, for which he was sentenced to 5 years imprisonment. Although advised of the right to do so, rather than note an appeal, he filed a motion for reduction of sentence, the trial judge having indicated that he would request a post sentence report. After receiving the post sentence report, the trial judge granted Johnson's motion, reducing his sentence from 5 to 4 years. Johnson then noted an appeal, challenging not the modified sentence, but the conviction itself. The appeal was dismissed as untimely by the Circuit Court for Baltimore. We affirmed, holding that the time for appeal ran from the date of the judgment of conviction, rather than from the date of the modification or reduction of the sentence. We also stated:

"Although the phrase 'a new judgment of conviction' may have been imprecise, it is clear from a reading of the section, and its interrelation to Maryland Rule 764 b 1, that

---

**17.** Maryland Rule 764b2 provided:

"2. In Open Court.

"A modification or reduction of sentence shall be made in open court and only after notice to the defendant and the State's attorney. A new judgment of conviction, setting forth the revised sentence and specifying the modification or reduction made, shall be entered of record so that the docket entries reflect the action taken."

it pertains merely to the entry of a 'modified' or 'reduced' revised judgment and not to the entry of a wholly new judgment."

*Id.* at 41, 333 A.2d at 43.

In *Greco v. State,* 347 Md. 423, 701 A.2d 419 (1997), we responded to this argument and, in the process characterized the *Johnson* holding. We rejected the State's argument that *Johnson* undermined the Court's conclusion in that case that reimposition of sentence subsequent to the reduction of an original sentence is an imposition of sentence. Judge Raker for the Court explained:

"The issue decided in *Johnson* was whether the granting of a motion to modify a sentence tolled the 30–day period within which the defendant was required to file an appeal. *Id.* at 30, 333 A.2d at 37–38. The Court in that case recognized that the granting of a motion to modify or reduce a sentence had the effect of revising the judgment in a criminal case, but did not create 'the entry of a wholly new judgment,' and thus had no implication for appeal deadlines. *Id.* at 41–42, 333 A.2d at 43–44.

"Under Maryland law, a final judgment in a criminal case is comprised of the verdict of guilty, and the rendition of sentence. *Middleton v. State,* 318 Md. 749, 759, 569 A.2d 1276, 1281 (1990). As related to this case, *Johnson* stands for the proposition that the granting of a motion to modify or reduce a sentence revises a final judgment because the original sentence has been stricken, but that final judgment is not 'wholly new' because the underlying verdict of guilty remains unchanged."

*Id.* at 432 n. 4, 701 A.2d at 423 n. 4. That explanation applies equally to the case sub judice.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REINSTATE THE JUDG-MENT OF THE CIRCUIT COURT FOR HOWARD COUN-TY. COSTS IN THIS COURT AND IN THE COURT OF*

*SPECIAL APPEALS TO BE PAID BY HOWARD COUN-TY.*